## STATE v. OTREY.

(132 N. W. 367.)

**Violation of liquor laws — sufficiency of evidence to convict.**

    1. Evidence examined, and *held* sufficient to warrant the conviction of the defendant for keeping intoxicating liquor for sale as a beverage.

**Criminal prosecution — instructions.**

    2. An instruction to the jury, when applicable to the fact and in the words of the statute declaring the law, is proper.

Opinion filed June 1, 1911. Rehearing denied, September 12, 1911.

Appeal from the County Court of increased jurisdiction for Ward County; *N. Davis,* J.

J. B. Otrey was convicted of keeping intoxicating liquor for sale as a beverage, and appeals.

Affirmed.

*Palda, Aaker, & Greene,* for appellant.

*Dudley L. Nash,* State's Attorney, and *C. L. Young,* Assistant Attorney General, for the State.

Goss, J.   This is an appeal from a conviction for keeping intoxicating liquors for sale as a beverage.   Defendant challenges the sufficiency of the evidence to warrant conviction as his principal assignment of error.   This necessitates a review of the testimony.   The following is a *résumé* of the evidence:

Defendant was with "a tall, dark complected fellow, dressed in a dark suit," on the evening of July 4, 1909, in the city of Minot, while said "fellow" made arrangements with a drayman to have twelve cases of beer hauled 7 miles to a celebration to be had the next day in the woods near the town of Logan.   By 7 o'clock the day of the celebration, defendant is at the Soo Line depot in company with this "dark complected fellow" of indefinite description, assisting in placing the beer cases on the wagon.   Defendant then finds a friend named Nelson, and they remain away from the wagon until it arrives at an icehouse a considerable distance from the depot, at which a sufficient cargo of ice is taken aboard to keep the wet goods cool for the day.   The wagon waits the arrival of the defendant, who from five to fifteen minutes thereafter appears, and, pursuant to instructions from the "tall, dark complected fellow" previously given to the drayman, the defendant pays for the ice.   He and his companion mount the wagon.   The beer and ice in the meantime had been covered with enough hay to conceal the contraband on board.   Defendant, with Nelson and the drayman, drives to the woods aforesaid, adjacent to the picnic grounds at Logan, and had just unhitched the horses at evidently the proper place to do the business of the day, having just opened up one of the twelve cases, when the sheriff, who had passed them *en route* a couple of times, interfered with plans and arrested defendant, the drayman, and Nelson.   Of course, the usual explanations were made, and the "tall, dark complected" stranger was named as the real party in interest, for whom the three had, with no intention of ever assuming control of the beer and without any intent to violate even the spirit of the prohibition law, unwittingly compromised themselves by being found in such close proximity to the twelve cases aforesaid.   On the trial the drayman,

22 N. D.—9.

Salter, defendant's companion, Nelson, and the defendant, all testified, as did the sheriff and deputy. The testimony of the first three men must have impressed the jury with their desire to shoulder the responsibility on some person other than themselves, and particularly place it upon the "tall, dark complected fellow" of name and antecedents unknown, who mysteriously appeared in their lives as an employer the night before, and forever after disappeared from the load of responsibility from the circumstances above related resulting in the apprehension of the three. The jury, however, may have considered the situation in another light. It is possible that they thought about the $8 in wages Salter was to get for hauling this beer 7 miles. And, again, defendant's omnipresence throughout the transaction may have been considered as singular. Perhaps they considered the act of the defendant in spending his money for ice to keep the cargo in condition as a circumstance slightly inconsistent with innocence. Of course, the innocent disguise of the whole transaction by the hay covering was only a circumstance, considered perhaps with the final location of the "blind pig" on wheels in the woods in readiness to do business. It was, of course, only an accident that the place chosen from which to make final distribution of this inheritance of grief from this mysterious "dark complected" stranger was in such close proximity to the place where our national holiday was being celebrated. Another unfortunate circumstance for the defendant was that the goods were labeled as Blatz beer, so that the same was presumed in law to be intoxicating, which presumption naturally prevented the question of the intoxicating nature of the beverage being as indefinite as the description of the real villian, the "dark complected" individual described in their testimony. We might here observe that every trial judge sees this "dark complected" or variously and always indefinitely described guilty third person in a great percentage of criminal cases where ordinarily guilt is conclusively proven against defendant's plea that such "court ghost," and not defendant, was the real guilty party. Courts are familiar with this peculiar form of *alibi,* and we shall presume the jury properly and fully considered all the testimony tending to convict the "specter" in this trial, but this did not cause them to overlook existing facts altogether. Possibly, also, the jury may have considered the previous occupation of the defendant as a vendor of malt at the town of Sawyer, a few miles

beyond Logan, as having something to do with defendant's familiarity with the field of operations on the particular day. Possibly, too, they considered as an element the government license issued him by the Federal government, undisputable evidence of the fact that it had collected from him a license, possibly construed by defendant as a per-mit to violate our state laws in such respect. In any event, notwith-standing the fact that the defendant testified "mechanical work" was his business, the jury concluded he was mistaken as to July 5, 1909, and evidently followed the presumption at law arising from a statute generally in force in this state, providing that the finding of intoxicat-ing liquors in such unusual quantities in the possession of the defend-ant at such place might be considered as sufficient evidence that the same was kept for sale contrary to law, in the absence of a satisfactory ex-planation thereof. Evidently defendant's explanation was not satis-factory to his peers of the realm, as they concluded the case against him by a verdict of guilty. The trial judge was of the same opinion as is apparent from his denial of defendant's motion for new trial. Precedent leads us to leave the verdict undisturbed under these circum-stances.

Another error complained of is a part of the court's instructions wherein the court gave a portion of § 9383, Rev. Codes 1905, relating to the finding of intoxicating liquor in unusual quantities in the pos-session of the defendant, and instructed them in the words of the statute that such evidence "shall be received and acted upon as presumptive evidence that such liquors were kept for sale contrary to law." The instruction given was in the words of the statute, the court, however, further instructing the jury immediately following that "such evi-dence may be considered by you as competent and sufficient upon which to base a conviction, providing the jury is satisfied beyond a reason-able doubt, from all the evidence in the case, that the defendant is guilty as charged." The court also instructed fully upon all phases of the case, so the jury understood the application of the law to the facts. The instruction in the words of the statute was certainly a correct in-struction as to the law.

Error is also urged in the court sustaining an objection to a question as to the defendant not employing the drayman to haul the beer in question. The testimony was excluded on the grounds that it was

already fully testified to and merely repetition, and an inspection of the record shows the ruling of the court was proper in such respect, the witnesses having been examined and re-examined at length on the same matter. The ruling was one under the circumstances discretionary with the court.

Our conclusion is against appellant's contention on all assignments urged, and accordingly judgment is ordered affirmed.

MORGAN, Ch. J., not participating. W. J. KNEESHAW, District Judge of the Seventh Judicial District, sat by request.